Good morning, Your Honors. May it please the Court, my name is Jason Ivey, and I represent the appellant, Ms. Carmen Self-Forbes. If I may, I'd like to reserve two minutes for rebuttal. This appeal concerns the granting of summary judgment in favor of Appellee Advanced Call Center Technologies, ACT or ACT, on the issue of whether there was revocation of consent to call my client on her cell phone. My client's position, Your Honors, is that the district court erred in finding that the testimony of Ms. Self-Forbes was merely colorable rather than concrete evidence of revocation of consent to be called. The district court from the order indicates that without a specific date of revocation testified to you by Ms. Self-Forbes or recollection of names of the agents with whom she spoke, that there is insufficient evidence to find a genuine dispute as to revocation. What's your main case that you're relying upon? The most analogous case that is helpful to Ms. Self-Forbes is that of Watkins. And I think Watkins is important because there the plaintiff testified that sometime in 2010 or 2011 that he received a phone call while sitting down for dinner, spoke with a representative and told that representative to stop calling. It was only when looking to the defendant's call records that the exact date of revocation was determined, and that was simply because there was only one call in 2010 or 2011. And I think that's very similar to the facts here where although Ms. Self-Forbes did not give direct testimony as to the exact date of revocation, the date of revocation can be deduced by looking to defendant's call records based on other testimony from Ms. Self-Forbes. And when we look to those call records on pages 58 and 59 of the excerpts of record, we see that on January 23, 2013, there is some evidence that corroborates Ms. Self-Forbes' testimony that in January of that same year, she in fact spoke to two, spoke to a representative twice on the same day, informing the representative to cease calling. And what is that from? Is that from the defendant's records or from your records? Yes. So Ms. Self-Forbes did not offer independent records of the call. She offered testimony through declaration and then was later deposed. So we're looking to defendant's own call records, which indicate, you know, dates of calls. Unfortunately, they don't seem to indicate the time of calls or length of call duration, but they do indicate that on January 23, 2013, there were two instances where a call was connected to an agent, and that is supported by the deposition testimony of Mr. Keller, where he says where there is a 1, that indicates that the dialer detected a live person on the other end and transferred it to an agent. Now, it's the appellee's contention that none of the 530 calls that took place over a 4-month period resulted in actual live contact with my client. That's what I thought they said, but is that contradicted by what you're just saying? Correct. So there's contradictory testimony. My client's saying that she spoke with representatives. I knew that. But, I mean, does the defendant say that there's some evidence of someone talking on that? No. The defendant says that there was no verbal communication whatsoever, and I find it somewhat difficult to believe that after 530 calls, there was never once a communication, and the defendant's own call records indicate that there was a connection at least 17 times, which is indicated by the name of an agent when the call is transferred to that agent. So there's direct contradictory evidence, which supports my client's position that there was a genuine issue. Well, the other side is relying on their call log, right? Well, my clients also look into the call log, but they look to the call log as well as a declaration. And the declaration. Can you explain to me the significance of the fact that the defendant's records mischaracterized your client's line as a cell line rather than a landline? Sure. I'll try to explain that argument. So there was expert testimony offered by Ms. Self-Forbes, and to boil it down, the testimony was that because the defendant's records characterized the phone number as a home phone number, there was a disincentive or really no incentive to document any type of revocation request, because debt collection calls to a landline using an auto dollar don't require consent, but calls to a cell phone, on the other hand, do. And I do acknowledge that we make a further argument that suggests that because of the disincentive to document revocation, there may have also been a disincentive to document that a telephone call took place. So your argument is that because they mischaracterized the nature of the line, their records may not have been accurate? Is that essentially? Essentially. And I acknowledge that in terms of arguing whether — because the call records indicate that there was no call even that was transferred to an agent. And so I acknowledge that the argument that there was a disincentive to document revocation leads to a disincentive to indicate whether there was an actual verbal communication. That part, I recognize, is attenuated. But it's not critical to my client's position that there's sufficient evidence here that goes beyond mere colorable evidence. It's not, in the words of the Supreme Court in, I believe, Matsushita, there's more than a metaphysical doubt as to whether there was revocation of consent. We need to look to the record as a whole to determine whether a jury, a rational jury, could determine from this evidence that, indeed, there was revocation. And I think pinning down the exact date of revocation is really a job for the fact finder. If my client had testified merely that there were 500 telephone calls and at some point before the last call I told them to stop, that probably would not have been enough to create a genuine issue of fact. But here we have an approximation of the time period. And, in fact, that brings me to the Ammons decision, which we cited as supplemental authority. I think that decision is important because the Court appeared to look to four different factors in determining whether there was a jury question on the revocation consent issue. The Court looked first to evidence regarding the calls themselves, such as how many calls, the evidence regarding efforts at revocation, third, the means of revocation, and then, fourth, information concerning the timing of revocation. Granted, in Ammons, the plaintiff was able to offer direct testimony as to the exact dates of revocation, whereas my client here offers an approximation of the month with other evidence to determine that date from defendant's call records. But I think, as a whole, there's sufficient evidence here that a fact finder should determine which version of the story to believe. I think also we mentioned the declaration of defendant. The declaration of Mr. Keller is interesting because he testifies that no call resulted in a communication, yet he was not one of the call agents that would have spoken with Ms. Self-Forbes. So I think there's a lack of actual personal knowledge as to that point. He was just going on the records of the business, right? Correct. If I may, I'd like to reserve the remainder. Good morning. May it please the Court, my name is Megan Hummel. I'm the attorney representing Respondent Advanced Call Center Technologies, Inc., in this matter. Your Honor, at its core, this is a case about failure of proof. In order to defeat my client's motion for summary judgment, the appellant was required to come forward with specific facts showing that there was a genuine issue for trial, not every fact. Counsel, it seems to me that she did so. She stated under oath that she had spoken with representatives of your client and expressly and unequivocally told them to stop calling. And she was able not to give a precise date, but to give a range saying, well, I was about to have a baby, and it was shortly before I had the baby. So it's not like saying, well, sometime between the ages of 20 and 35, I made a phone call. So, and she was able to say that the agent she spoke to was a female. So I really don't understand the position, honestly, that there is no evidence. Why isn't that an ordinary question of fact? Yeah, Your Honor, let me address that. If we could look at, there are some problems with the appellant's declaration, and it starts on ER-40. Isn't that just what juries are for, is to figure out whether their, you know, whose version is more plausible and whose is less plausible? But to say that there are problems with it or you don't find it plausible doesn't seem to me to be a summary judgment kind of standard. Let me answer that, Your Honor. In cases like Watkins and the cases that were cited in the supplemental authority, JARA and Ammons, I think it would be a question for the jury to decide when it is undisputed that a communication occurred. But in this case, and in contrast to what the appellant is arguing, the call logs don't show that communication was made. The call logs don't show. So isn't it permissible to show that the call logs are erroneous? I mean, there's no rule that your evidence is more plausible or more to be believed than her evidence, which is under oath. And they have shown that your call logs were inaccurate in some respect. I don't recall a specific instance where they showed our call logs. Well, with regards to the number. They mischaracterized the nature of the calls. Mischaracterization of the number, that's correct. That was a mistake in the original account application. But here's the crux of what we're looking at here. In order for her to revoke consent, there would have had to have been actual contact between the parties. Our call logs, yes, our dialer platform did route at least two calls in January of 2013 to a live representative, based on the dialer's perception that there was a person on the other end of that line. Did that fit in with when she said she might have called? It fits in with one of the instances, yes, Your Honor, when she said she might have called. And isn't that enough to defeat summary judgment? It doesn't have to be 100 percent every issue of fact. But one issue of material fact is enough, isn't it? I think, yes, one issue of material fact is enough. But I don't believe that's an issue of material fact, Your Honor. And here's why. The inconsistencies. There is no other evidence in the record to substantiate the appellant's claims other than the statements in her declaration. And the statements in her declaration are inconsistent with the factual data my client provided, as well as her own statements during deposition. If you look at the declaration on page 42, she's talking about calls that occurred, she believed, in early January of 2013. Now, this declaration was signed in October of 2016. You can see the date on ER-44. A few weeks later, in November of 2016, ACT deposed Ms. Forbes. And at that deposition, she had no recollection of any dates that she had spoken to anyone from ACT. And her best approximation was that she had a call in December of 2012. Well, we know she couldn't have received a call in December of 2012 because the account wasn't placed with ACT until 2013. Well, this sounds to me like excellent cross-examination. But this is summary judgment. This isn't your argument to a jury. I understand that, Your Honor. And I think we really go back to the point we put in our brief, and I don't know. I think it's crucial to this case, and that is the appellant can't rest on a self-serving and conclusory affidavit or declaration unsupported by factual data, and, in fact, directly refuted by factual data provided by ACT in order to defeat a motion of summary judgment. Where do you get that? All evidence is self-serving. A party doesn't present evidence that serves somebody else. So that seems kind of like a, I don't know, a truism that all evidence that a party presents is self-serving. So if someone says under oath the light was red when the other car came through, but they don't have a photograph, that doesn't create an issue of fact because there's no corroboration? I mean, she says these things under oath, and you dispute it, but. . . I think in your hypothetical, Your Honor, if someone says the light is red under oath, but the photographs show the light was green, and witness testimony shows the light is green, and there are records showing the light was green, that's when we run into the problem. And I think that's the case. . . Well, that may be a lousy case for the plaintiff, but it doesn't equal summary judgment. What is the case that you're relying on? The case that I'm relying on is a case in our circuit. The citation is Taylor v. List, 880 F2D 1040. And I'm sorry. And that's in regards to whether a self-serving and conclusory affidavit is sufficient to defeat summary judgment. Is that correct, Your Honor? You think that the plaintiff would have had a sufficient case to overcome summary judgment if she remembered the exact date when she talked to some representative of your company? I don't think she would need to remember the exact date, Your Honor. I don't think the case law in this circuit or in other circuits supports that finding. What I think she would need is consistency between her sworn declaration and her deposition testimony. I think she would need to show corroboration with our call records. In Watkins, in Ammons, in Jara, all of those cases, it was undisputed that the parties had an actual communication. What was disputed was what was said during those communications, the intent of the communications and the effect under the law. Here, it's highly disputed whether a communication ever occurred. Our dialer call logs show that we made two calls to her on January 23, 2013, but both of those calls resulted in no communication with anyone. Plaintiff or anyone else, I believe one was dead air and one was a voicemail. We didn't leave a message. Shouldn't the fact finder determine that, though, whether there was actual communication even though your records show otherwise? In my opinion, no, Your Honor. I don't believe one affidavit against this body of factual data is enough to defeat summary judgment. If she had her husband listening on the telephone conversation and he said she did it, that's enough. It might have shifted so that maybe now we have more than just one declaration. If she had saved her account statements, if she had read her terms and conditions, if she had produced her phone records, which she testified, and you'll see in the record that she did not produce, any of that might have changed the situation that we're looking at right now. But the fact is that she didn't produce a single document during litigation. She gave conflicting statements on whether phone calls occurred and the dates they occurred on, and she gave factually impossible testimony on our DILRT platform. If you look at page 38 of the record, Ms. Forbes gave very detailed accounting of a conversation she had with ACT where she was prompted to press 1 if she wanted a certain result or press 2 if she wanted another result. And she reported that no matter what she pressed, she couldn't reach anyone. Our DILRT system is physically incapable of offering prompting cues of that nature. And so the inconsistencies in her testimony continue to mount. And against the body of evidence that my client presented, this declaration simply does not meet the burden under Rule 56. If you have no further questions, I believe I'm done. Thank you, Your Honor. Thank you. Your Honor, as I'd first like to address the last point, which was argued that the inconsistency exists, I wanted to point out that the declaration of Pat Connolly, where he testified that the DILRT platform was not designed to have a press 1 option, that declaration was signed in 2016. And if you read it very carefully, never once does it refer to the state of the dialing system or its configuration in 2013 when the calls took place. So there is, when we take all inferences in favor of Ms. Self-Forbes, it appears that declaration was written at the current state in 2016, which casts doubt on that testimony in terms of whether that was the case in 2013. With regard to the Taylor v. List decision, that declaration in the case, in that case was found to be conclusory because it truly was. It stated some facts upon information and belief, which is not enough. It wasn't based on any personal knowledge. Right. And the court in footnote 3 says you need personal knowledge, which is why I think when Mr. Keller testified that there was no contact, he lacked personal knowledge. He was merely looking at the call records and going off of that. Whereas when she makes an affidavit saying I did this, it is based on personal knowledge, I think. Correct. That's correct. Now, in terms of the argument that there's problems with my client's declaration, I don't really see any problems. There were no conflicting dates. She's been fairly consistent as to the approximate time period of when the revocation occurred. If we had call records from my client's carrier, that would have been helpful. But unfortunately, we don't, and I see my time is up. Thank you. Are there any further questions? There don't appear to be any. Thank you. Thank you. The Court appreciates the presentations. The next case, the case is submitted for decision. The next case for argument is United States v. Wagner.
judges: Siler, Schroeder, Graber